IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE**, a minor, by **JOHN DOE**, and **SUSAN DOE**, her parents and natural guardians, ) ) ) ) Plaintiffs, ) ) v. ) ) **NORTH ALLEGHENY SCHOOL DISTRICT**, **DR. PATRICIA P. GREEN**, in her individual capacity and as Superintendent of Schools, **DR. LAWRENCE A. BUTTERINI**, in his individual capacity and as Principal, **WALTER E. SIEMINSKI**, in his individual capacity and as Assistant Principal, **WILLIAM H. YOUNG**, in his individual capacity and as Assistant Principal, and **BILL STOOPS**, in his individual capacity and as Head of Security, ) ) ) ) ) ) ) ) ) ) ) ) Defendants. ) | 2:08cv1383 **Electronic Filing** |

**MEMORANDUM OPINION**

August 22, 2011

I.  **INTRODUCTION**

Jane Doe, a minor, by John Doe and Susan Doe, her parents and natural guardians ("Plaintiffs"), filed a four (4) count complaint against the North Allegheny School District (the "District"), Dr. Patricia P. Green ("Dr. Green"), Superintendent of Schools, Dr. Lawrence A. Butterini ("Dr. Butterini"), Principal, Walter E. Sieminski ("Sieminski"), Assistant Principal, William H, Young ("Young"), Assistant Principal, and Bill Stoops ("Stoops"), Head of Security (the "Individual Defendants")(collectively with the School District "Defendants"). Plaintiffs

allege the following: (1) a claim under 42 U.S.C. § 1983 for violation of Jane Doe's rights under the Fourteenth Amendment to the Constitution of the United States; (2) a claim under Article 1, section 1 of the Pennsylvania Constitution; (3) a claim that the School District and the Individual Defendants violated Jane Doe's rights under 20 U.S.C. § 1681, Title IX; and (4) a claim that the School District violated Jane Doe's rights under Title IX. By Order dated September 28, 2010, the Court the Court dismissed Plaintiffs' Title IX claims against the Individual Defendants and the punitive damage claim against the School District. Defendants have filed a motion for summary judgment, Plaintiffs have responded and the motion is now before the Court.

II.  STATEMENT OF THE CASE

Jane Doe attended ninth and tenth grade at the North Allegheny Intermediate High School ("NAI") where she met a male student identified for the purpose of this litigation as James Roe ("Roe"). Defendants' Concise Statement of Material Facts ("Def. CSMF") ¶¶ 6 & 8. It is admitted that at some point during her attendance at NAI, Jane Doe had a consensual sexual encounter with James Roe on or near the NAI school grounds. Def. CSMF ¶¶ 9 & 10. Jane Doe admitted to a second consensual sexual encounter with Roe while they attended NAI as well. Def. CSMF ¶ 11.

For eleventh and twelfth grades, Jane Doe attended North Allegheny High School ("NAH"). Def. CSMF ¶ 6. During the 2005-2006 school year, Jane Doe and James Roe were enrolled in the District's smoking cessation class. Def. CSMF ¶¶ 13 & 18. Following their enrollment into the smoking cessation class, Jane Doe testified that she and Roe skipped class together four or five times in order to go outside and have a cigarette. Def. CSMF ¶ 19. Jane Doe was aware that smoking on school grounds and cutting class were violations of the North

Allegheny School District Code of Student Conduct and that she could be suspended for such violations. Def. CSMF ¶¶ 20, 21, 24 & 25. Further, the 2005-2006 Student Handbook stated that NAH was a "closed campus" and that students were restricted from unauthorized areas, including the school's parking lot, during the school day. Def. CSMF ¶ 22.

On the occasions that Jane Doe and Roe skipped classes to smoke, Roe began asking Jane Doe to give him oral sex. Def. CSMF ¶ 26. On the third or fourth time Jane Doe and Roe had skipped class that school year, Jane Doe consensually performed oral sex on Roe in a car in the parking lot of NAH. Def. CSMF ¶ 22.

On Friday, April 28, 2006, between 12:30 p.m. and 1:00 p.m., Jane Doe and Roe went out the front door of NAH along with several other groups of students who were leaving the building for legitimate approved purposes. Def. CSMF ¶¶ 31, 32 & 33. Roe and Jane Doe walked to the upper parking lot of NAH and smoked a cigarette. Def. CSMF ¶¶ 35 & 36. As he had done on previous occasions, Roe asked Jane Doe to perform oral sex on him. Def. CSMF ¶ 37. Jane Doe consented and willingly began to perform oral sex on Roe in the NAH parking lot. Def. CSMF ¶ 38. During his sexual encounter, Roe told Jane Doe that they were going to "have sex." Def. CSMF ¶ 39. Jane Doe told Roe "no", but despite her protests, she alleges that Roe had sexual intercourse with her against her will. Def. CSMF ¶¶ 40 & 41.

Jane Doe and Roe returned to the school building and Doe went to a bathroom. Def. CSMF ¶¶ 43 & 44. Erica Armstrong ("Armstrong"), a friend of Jane Doe, found her in the bathroom, saw that she was upset, and took her to Jeff Longo, the District's Student Assistance Coordinator[1]. Def. CSMF ¶¶ 14, 44 & 45. Armstrong told Longo and Howell that Jane Doe had been raped. Def. CSMF ¶ 46. Longo and Doe went to his office and NAH Principal Dr. Larry

---

[1] Longo was also the leader of the smoking cessation course that both Doe and Roe attended, and Doe and Armstrong had previously discussed personal issues with him and Danielle Howell, an intern enrolled in a graduate program in social work. CSMF ¶¶ 14, 15 & 16.

3

Butterini ("Dr. Butterini") was summoned. Def. CSMF ¶ 47. Dr. Butterini went to Longo's office and asked Doe to tell him what happened. Def. CSMF ¶ 48. Jane Doe declined to identify her assailant. Def. CSMF ¶ 50. Jane Doe's mother and the McCandless Township Police Department were called, and Doe was taken to Passavant Hospital to be treated and examined. Def. CSMF ¶¶ 49 & 50.

The NAH administrative staff reviewed surveillance camera footage which showed Jane Doe leaving the building with Roe during the relevant time period. Def. CSMF ¶ 51. James Roe was interviewed by the District on Monday, May 1, 2006, and he admitted that he had sexual intercourse with Jane Doe on school property, but contended that the encounter was consensual. Def. CSMF ¶¶ 52 & 53. Dr. Butterini immediately issued an out-of-school suspension to James Roe, and informed that Roe he would be brought before the School Board for expulsion. Def. CSMF ¶ 54. Under an Expulsion Agreement, Roe and his family agreed that Roe would be voluntarily expelled. Def. CSMF ¶ 55.

Juvenile charges were filed against Roe, charging him with sexual assault, rape, involuntary deviate sexual intercourse, and indecent assault. Def. CSMF ¶¶ 56 & 57. On December 1, 2006, a hearing was held in Juvenile Court before the Honorable Kathleen Mulligan, and Roe was adjudicated delinquent on the sexual assault charge, and found not guilty of rape, involuntary deviate sexual intercourse, and indecent assault. Def. CSMF ¶¶ 58, 59 & 60.

### III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine

4

and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV. DISCUSSION

### A. Section 1983 Claim

Plaintiffs allege a substantive due process claim against the Individual Defendants arising out of James Roe's interference with Jane Doe's right to bodily integrity in violation of 42 U.S.C. § 1983.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . .

42 U.S.C. § 1983. Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137 144 n.3 (1979).

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 2. In *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189 (1989), the United States Supreme Court rejected a substantive due process claim holding that in the absence of special circumstances the state has no duty to protect a person from private violence, stating:

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on

> the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. at 195. Based on this language, the Court of Appeals for the Third Circuit found that a constitutional violation may occur under a "state-created danger" theory[2] when the state acts in a way that makes a person substantially more vulnerable to injury from another source than he or she would have been in the absence of the state intervention. *See Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1151-52 (3d Cir. 1995). To prevail on a "state-created danger" claim, a plaintiff must prove the following four elements:

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). The Individual Defendants contend they are entitled to judgment as a matter of law based upon Plaintiffs' failure to meet the elements of the state-created danger theory.

---

[2] The United States Court of Appeals for the Third Circuit has actually recognized two exceptions to this general rule. The first exception is the "state-created danger," and the second exception occurs when the state has a duty to protect or care for individuals when a "special relationship" exists. The "special relationship" theory is a very limited one that requires a custodial relationship in the nature of incarceration or institutionalization. *Torisky v. Schweiker*, 446 F.3d 438, 444-445 (3d Cir. 2006). The Third Circuit has repeatedly stated that no special relationship exists between school children and the state. *Sanford v. Stiles*, 456 F.3d 298, 304 n.4 (3d Cir. 2006)(citing cases). Plaintiffs do not claim that a "special relationship" exists in this action.

In this instance, it is paramount to stress that under the fourth element of the state-created danger test, liability "is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc). *See also Brown v. Grabowski*, 922 F.2d 1097, 1100-01 (3d Cir. 1990) (emphasizing *DeShaney's* holding "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship . . . support a civil rights claim"). The Third Circuit has also recognized that the mere failure to protect an individual does not violate the Due Process Clause. *See e.g. Kaucher v. County of Bucks*, 455 F.3d 418, 433 n.10 (3d Cir. 2006)(stating that petitioners must allege affirmative acts that were the "but for cause" of the risks they faced because a failure to act cannot form the basis of a valid Section 1983 claim.); *Bright v. Westmoreland County*, 443 F.3d at 283-284 (no state created danger claim for failure to hold revocation hearing for an individual in violation of his parole prior to killing an eight-year-old girl); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907-08 (3d Cir. 1997) (no state created danger claim for failure to prevent mentally disturbed individual from entering school and attacking teacher); *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d at 1376 (no state created danger claim for failure of school officials to investigate and stop instances of sexual abuse of students) (en banc); *Brown v. Grabowski*, 922 F.2d 1097 (3d Cir. 1990) (no state created danger claim for failure to file criminal charges against an individual who repeatedly threatened and assaulted former girlfriend, despite reports to the police by the victim and her family).

In *Jones v. Ind. Area Sch. Dist.*, 397 F. Supp. 2d 628 (W.D. Pa. 2005), this Court granted summary judgment to the individual defendants on plaintiff's Section 1983 claim. In *Jones*, plaintiff alleged she was harassed for several years by a male special education student

8

and the defendants failed to investigate and stop the misconduct. Finding that the plaintiffs failed to meet the fourth element of the state-created danger theory, the Court stated:

> [Defendants] cannot be said to have placed [plaintiff] in a more dangerous situation. Plaintiffs argue that these individuals used their authority to create an opportunity that otherwise would not have existed for John Doe's harassing conduct to take place. However, the record does not support this argument. Rather, Plaintiffs have demonstrated only that [Defendants] may not have done enough to prevent [Plaintiff] from being harmed once they knew of the threat, not that they increased the danger by, for example, locking her in a room with John Doe or telling Doe he could do what he wanted. Thus, this situation resembles the scenarios in *D.R.*, *Morse* and *Page*, not the situation in *Maxwell*, in which school officials took additional measures that increased the harm to the minor student. Therefore, Plaintiffs cannot maintain a substantive due process claim against [Defendants] for violating [Plaintiff's] right to bodily integrity pursuant to the state-created danger theory of liability.

*Jones v. Ind. Area Sch. Dist.*, 397 F. Supp. 2d at 650.

Moreover, two recent decisions of District Courts in this Circuit involving student-on-student physical assaults dismissed state created danger claims based upon plaintiff's failure to demonstrate affirmative acts by a state actor that created a danger to the victims. In *Brown v. Sch. Dist. of Phila.*, 2010 U.S. Dist. LEXIS 76717 (E.D. Pa. July 28, 2010), a special education student diagnosed with mild retardation was sexually assaulted by five fellow students in the high school's auditorium balcony. In granting summary judgment on plaintiff's substantive due process claim, the court found as a matter of law that refusing to properly discipline, expel or transfer certain student violators did not constitute an affirmative act under the state created danger theory. *Brown v. Sch. Dist. of Phila.*, 2010 U.S. Dist. LEXIS 76717 at *23.

Similarly, in *Morrow v. Balaski*, 2011 U.S. Dist. LEXIS 26937 (W.D. Pa. Mar. 16, 2011), the court dismissed minor plaintiffs' §1983 claim alleging a Fourteenth Amendment substantive due process based upon a failure to establish the fourth element of the state-created danger

theory which requires an affirmative act. In *Morrow*, the minor plaintiffs were threatened with physical harm and subsequently physically attacked by another student on three separate occasions. *Morrow v. Balaski*, 2011 U.S. Dist. LEXIS 26937 at *3-*4. The student attacker was charged in the assaults, was placed on probation and was adjudicated delinquent. *Id.* at *4-*5. The student attacker was allowed to remain in school following her conviction of a crime in violation of the Disciplinary Code. *Id.*

The plaintiffs argued that the defendants' omissions in not expelling the convicted student or otherwise protecting the minor plaintiffs rendered such minor plaintiffs more vulnerable to danger. *Id.* at *14-*15. In dismissing plaintiffs' state-created danger claim, the court stated:

> the creation of the danger alleged by Plaintiffs was the failure of the Defendants to utilize their authority to expel [the student attacker]. . . . [Plaintiffs] have not stated a cause of action under current Third Circuit case law, which the Court is bound to follow. Plaintiffs have identified no action of the Defendants that utilized their authority in a way that rendered Minor Plaintiffs more vulnerable than they would have been otherwise.

*Id.* at *15-*16. (citations omitted).

In support of their state-created danger claim, Plaintiffs herein, citing to the many listed disciplinary violations on Roe's record, argue that the Administration at both NAI and NAH "rendered Plaintiff Jane Doe more vulnerable to harm by permitting James Roe to remain enrolled within the District when their policies dictated that he should have been expelled . . ." Plaintiffs' Brief in Opposition at pp. 13-14. Further, Plaintiffs contend that the failure to discipline Roe following allegation of sexual misconduct made by three (3) female students emboldened Roe and made Jane Doe more vulnerable to the danger of sexual assault.

This argument fails as a matter of law. Though the Third Circuit has recognized that the line between action and inaction may not always be clear, *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d at 1374, the case law of this Circuit explicitly requires an affirmative act, rather than inaction. *See Ye v. United States*, 484 F.3d 634, 638 (3d Cir. 2007); *Bright v. Westmoreland County*, 443 F.3d at 282; *see also Brown v. Grabowski*, 922 F.2d at 1100-1101 (a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship, support a civil rights claim). Plaintiffs cannot show that the Individual Defendants did anything more than fail to act to prevent the sexual assault by James Roe, a private actor. This failure to act does not give rise to a cognizable state-created danger claim as a matter of law. Summary judgment on Plaintiffs' claim under 42 U.S.C. § 1983 for violation of Jane Doe's rights under the Fourteenth Amendment to the Constitution of the United States shall be granted.

B.  Plaintiffs' Claim Under the Pennsylvania Constitution

Plaintiffs allege a claim for violation of Jane Doe's right to bodily integrity as secured under Article 1, Section 1 of the Pennsylvania Constitution. The Pennsylvania Supreme Court has held that the requirements of Article I, Section 1, of the Pennsylvania Constitution are not distinguishable from the Due Process Clause of the 14th Amendment of the United States Constitution, and this Court must apply the same analysis to both claims. *Pennsylvania Game Comm'n v. Marich*, 666 A.2d 253, 255 n.6 (Pa. 1995); also see *Burger v. Bd. of Sch. Dirs.*, 839 A.2d 1055, 1062 n.12 (Pa. 2003). Therefore, having already determined that the Individual Defendants did not violate Jane Doe's substantive due process rights under the state-created danger theory, Plaintiffs' claim under the Pennsylvania Constitution also fails as a matter of law. *See Johnston v. Twp. of Plumcreek*, 859 A.2d 7, 14 n.16 (Pa. Commw. 2004) (Having

determined that certain Ordinances did not violate plaintiffs' substantive due process rights under the state-created danger theory, the court found that such ruling " also disposes of [plaintiffs'] claim under Article I, Section 1 of the Pennsylvania Constitution.)

    C.    <u>Claims Under Title IX</u>

At Counts Three and Four of their Complaint, Plaintiffs allege violation of Jane Doe's rights under Title IX for allegedly permitting student-on-student sexual harassment. The allegations in Count Three are made against the School District and the Individual Defendants, while Count Four, which alleges a failure to remedy a sexually hostile environment, is made against the School District only. The Title IX allegations against the Individual Defendants were dismissed as a matter of law by Order dated September 28, 2009.

Title IX provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance . . . .

20 U.S.C. § 1681(a). Although Congress only provided for administrative enforcement of Title IX's prohibition against discrimination, the Supreme Court held in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), that Title IX was also enforceable through an implied private right of action. Thereafter, the Court held that monetary damages can be recovered in a private action under Title IX. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992).

To prevail against the School District on their claim of student-on-student sexual harassment under Title IX, Plaintiffs must show that (1) the School District received federal funds; (2) sexual harassment occurred; (3) the harassment occurred under "circumstances wherein the [School District] exercise[d] substantial control over both the harasser and the context in which the . . . harassment occurred"; (4) the [School District] had "actual knowledge"

12

of the harassment; (5) the [School District] was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. at 645, 650.

The School District contends that Plaintiffs have failed as a matter of law to demonstrate that: (1) sexual harassment occurred; (2) the District had actual knowledge of the harassment; and (3) the District was deliberately indifferent to the harassment. Plaintiffs failed to address the District's Title IX arguments in their brief in response. After a comprehensive review of the record, the Court finds that Plaintiffs have failed to meet the *Davis* requirements necessary to show student-on-student sexual harassment under Title IX.

    1.    <u>Sexual Harassment</u>

The United States Supreme Court described Sexual Harassment in the Title IX context as follows:

> Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations, and relationships," . . . including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. . . Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. . . Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 651-652 (Citations omitted). Jane Doe specifically testified about an incident that allegedly occurred on a bus ride from NAI to NAH during which Roe made harassing comments to Doe and pushed her to the ground as they were getting off of the bus. *See* Jane Doe Deposition ("Doe Depo."), p. 61. With regard to that incident, Doe testified that Roe made certain comments about her appearance and about the classes she had to take at NAI. Doe Depo. p. 63. Doe also testified, however, that Roe stopped making such comments to her. Doe Depo. p. 66.

More concerning to this Court, however, is the uncontested testimony that on several occasions from the time the parties were in ninth grade until the April 2006 sexual assault, Roe asked Jane Doe to perform sexual acts upon him. Such conduct certainly can be considered sexually harassing. It is also uncontested that Jane Doe consented to Roe's requests at least four (4) times including on the day of the alleged rape.

The proper inquiry for sexual harassment purposes is not "consent" or "voluntariness," but rather "welcomeness." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 705 n.10 (E.D. Pa. 2007) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68 (1986) ("The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'"). The unwelcome conduct may include "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *Stroehman Bakeries, Inc. v. Local 776, Intern. Broth. of Teamsters*, 969 F.2d 1436, 1442 (3d Cir. 1992).

The Court believes that Jane Doe certainly had the capacity to welcome requests for sexual favors from Roe, who was the about same age and who she described as a friend. There is no evidence in the record that she ever felt harassed or confided in anyone with regard to such requests. Doe does not contend that she was threatened on those occasions, and did not

14

detail any anger by Roe on those occasions she did not comply with his requests. Nonetheless, this Court cannot find as a matter of law that Roe requests for sex were welcome. Therefore, whether Roe's conduct constituted harassment under Title IX is a question of fact.

2. Actual Knowledge

"An educational institution has 'actual knowledge' [or 'actual notice'] if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005) (quoting 3C FED. JURY. PRAC. & INSTR. § 177.36 (5th ed. 2001)). Actual knowledge is predicated on notice to an "appropriate person." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). An "appropriate person" is, "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.* Liability for a school district therefore occurs only when an "appropriate person" has "actual knowledge" of the prohibited activity. *Bostic v. Smyrna School Dist.*, 418 F.3d at 361. In most cases, "a school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX." *Warren v. Reading Sch. Dist.*, 278 F.3d 163, 171 (3d Cir. 2002).

Here, the District had vested the building principals with exclusive authority to receive and investigate harassment complaints. The District's Harassment Tracking form in place during the 2005-2006 school year states:

> Any North Allegheny student, parent(s) of a North Allegheny student, North Allegheny administrator, teacher or staff member who believes that he or she has been the subject of any alleged form of harassment by any North Allegheny student(s), North Allegheny administrator(s), teacher(s) or staff member(s) should immediately bring the matter to the attention of the building principal. This form should be utilized to detail the action that you believe are in violation of the North Allegheny Harassment Policy.

15

> This form may be completed by the building Principal on behalf of any North Allegheny student, North Allegheny parent(s), teacher or staff member.
>
> Upon receipt of a complaint, the building Principal will conduct a prompt and thorough investigation.

*See* Appendix to Defendants' Motion, Exhibit K.

The only evidence in this record that Jane Doe made any complaints regarding Roe, and/or his relationship or acquaintance with Doe from the time they met in ninth grade until the alleged assault, was the incident that allegedly occurred on a bus ride from NAI to NAH described above. Jane Doe testified that she reported Roe's alleged comments and the push to Logan and Howell. Doe Depo. p. 61. Longo and Howell, however, denied receiving any complaints from Doe regarding harassment by James Roe. Longo Affidavit ¶¶ 14-15; Howell Affidavit ¶ 7. Notwithstanding the denials by Longo and Howell, neither is an appropriate party under the law. Howell was a student intern and Longo was the NAH Student Service Coordinator. There is no evidence in the record that either Longo or Howell had authority to take corrective action to end such conduct.

Moreover, the conduct which would be considered sexual harassment if found to be unwelcome, was Roe's many requests that Doe perform sexual acts on him. There is, however, no evidence in this record that Doe spoke to anyone about such conduct prior to the April 28, 2006, incident. Therefore, without evidence that an appropriate person in the School District had actual knowledge that Jane Doe was the victim of sexual harassment, Plaintiffs' Title IX claim against the District fails as a matter of law.

### 3. Deliberate Indifference

To establish deliberate indifference, Plaintiffs must show that the School District made an official decision not to remedy the sexual harassment. *See Gebser v. Lago Vista Ind. Sch. Dist.*,

524 U.S. at 290. The School District will be deemed deliberately indifferent to acts of student-on-student harassment only where its response to the harassment or lack thereof is "clearly unreasonable in light of the known circumstances." *Davis v. Monroe County Bd. of Educ*, 526 U.S. at 648-649.

Plaintiffs' allegations of deliberate indifference by the School District, relate to matters of action or inaction prior to Doe becoming an assault victim. They contend the School District acted with deliberate indifference to a "known, clear and continuing danger" that allowed Roe to remain in the student population despite his prior sexual assaults. Further, the School District allowed James Roe to leave the school building during periods of instruction without supervision, knowing he was involved in two prior incidents of sexual assault. There are no allegations that the District knew of any sexual harassment of Jane Doe, nor is there any evidence there was a decision not to remedy the alleged sexual harassment. Moreover, once it was determined that Roe assaulted Doe, the District took immediate action. The Plaintiffs, therefore, also fail to meet this requirement necessary to show student-on-student harassment under Title IX.

### V. CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment shall be granted. An appropriate order follows.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:    Mark C. Stopperich, Esquire  
       Alfred Maiello, Esquire  
       R. Russell Lucas, Jr., Esquire  
       Roger W. Foley, Jr., Esquire  
       (*Via CM/ECF Electronic Mail*)